UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ORA MERRILL,<br><br>    Plaintiff,<br><br>    v.<br><br>ANDREW SAUL,<br>Commissioner of Social Security,<br><br>    Defendant. | No. 2:18-cv-02270-AC<br><br><br><br>ORDER |

Plaintiff seeks judicial review of a final decision of the Commissioner of Social Security ("Commissioner"), denying her application for continuing disability insurance benefits ("DIB") under Title II of the Social Security Act, 42 U.S.C. §§ 401-34, and for Supplemental Security Income ("SSI") under Title XVI of the Social Security Act ("the Act"), 42 U.S.C. §§ 1381-1383f.[1] For the reasons that follow, the court will GRANT plaintiff's motion for summary judgment, DENY the Commissioner's cross-motion for summary judgment, and remand this case for an immediate award of benefits.

---

[1] DIB is paid to disabled persons who have contributed to the Disability Insurance Program, and who suffer from a mental or physical disability. 42 U.S.C. § 423(a)(1); Bowen v. City of New York, 476 U.S. 467, 470 (1986). SSI is paid to financially needy disabled persons. 42 U.S.C. § 1382(a); Washington State Dept. of Social and Health Services v. Guardianship Estate of Keffeler, 537 U.S. 371, 375 (2003) ("Title XVI of the Act, § 1381 *et seq.*, is the Supplemental Security Income (SSI) scheme of benefits for aged, blind, or disabled individuals, including children, whose income and assets fall below specified levels . . .").

## I. PROCEDURAL BACKGROUND

In a decision dated December 4, 2009, plaintiff was found disabled and eligible for DIB beginning October 7, 2003. AR 14, 320. In that decision, plaintiff was found capable of performing only unskilled, sedentary level work with frequent and unplanned breaks. AR 320.[2] In a continuing disability review ("CDR"), the agency re-evaluated and continued her disability on November 7, 2011. AR 14, 320. In a subsequent CDR decision issued on June 4, 2015, the agency determined that plaintiff's disability had ended on June 2, 2015, finding plaintiff able to perform light work. AR 14, 310-13. A state agency disability hearing officer denied plaintiff's request for reconsideration, and administrative law judge (ALJ) Sara A. Gillis affirmed after a hearing. AR 14-22, 270-99 (transcript), 317-23. Plaintiff appeared and testified at the hearing, and was represented by counsel. AR 270. Vocational Expert (VE) Ronald Hatakeyama also testified. Id. The ALJ's decision became final when the Appeals Council denied review. AR 1-4. Plaintiff then commenced this action for judicial review. 42 U.S.C. § 405(g), ECF No. 1. The parties consented to the jurisdiction of the magistrate judge. ECF Nos. 6, 8. The parties' cross-motions for summary judgment, based upon the Administrative Record filed by the Commissioner, have been fully briefed. ECF Nos. 13 (plaintiff's summary judgment motion), 14 (Commissioner's summary judgment motion), 16 (plaintiff's reply).

## II. FACTUAL BACKGROUND

Plaintiff was born in 1980, and accordingly was 35 years old as of the disability review date, making her a "younger individual age 18-49" under the regulations. AR 21; see 20 C.F.R §§ 404.1563(c), 416.963(c) (same). Plaintiff has at least a high school education, and can communicate in English. AR 21.

## III. LEGAL STANDARDS

The Commissioner's decision that a claimant is not disabled will be upheld "if it is supported by substantial evidence and if the Commissioner applied the correct legal standards." Howard ex rel. Wolff v. Barnhart, 341 F.3d 1006, 1011 (9th Cir. 2003). "'The findings of the

---

[2] The Administrative Record ("AR") is located at ECF No. 12-3 through 12-47.

Secretary as to any fact, if supported by substantial evidence, shall be conclusive . . ..'" Andrews v. Shalala, 53 F.3d 1035, 1039 (9th Cir. 1995) (quoting 42 U.S.C. § 405(g)).

Substantial evidence is "more than a mere scintilla," but "may be less than a preponderance." Molina v. Astrue, 674 F.3d 1104, 1111 (9th Cir. 2012). "It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971) (internal quotation marks omitted). "While inferences from the record can constitute substantial evidence, only those 'reasonably drawn from the record' will suffice." Widmark v. Barnhart, 454 F.3d 1063, 1066 (9th Cir. 2006) (citation omitted).

Although this court cannot substitute its discretion for that of the Commissioner, the court nonetheless must review the record as a whole, "weighing both the evidence that supports and the evidence that detracts from the [Commissioner's] conclusion." Desrosiers v. Secretary of HHS, 846 F.2d 573, 576 (9th Cir. 1988); Jones v. Heckler, 760 F.2d 993, 995 (9th Cir. 1985) ("The court must consider both evidence that supports and evidence that detracts from the ALJ's conclusion; it may not affirm simply by isolating a specific quantum of supporting evidence.").

"The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving ambiguities." Edlund v. Massanari, 253 F.3d 1152, 1156 (9th Cir. 2001). "Where the evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's decision, the ALJ's conclusion must be upheld." Thomas v. Barnhart, 278 F.3d 947, 954 (9th Cir. 2002). However, the court may review only the reasons stated by the ALJ in his decision "and may not affirm the ALJ on a ground upon which he did not rely." Orn v. Astrue, 495 F.3d 625, 630 (9th Cir. 2007); Connett v. Barnhart, 340 F.3d 871, 874 (9th Cir. 2003) ("It was error for the district court to affirm the ALJ's credibility decision based on evidence that the ALJ did not discuss").

The court will not reverse the Commissioner's decision if it is based on harmless error, which exists only when it is "clear from the record that an ALJ's error was 'inconsequential to the ultimate nondisability determination.'" Robbins v. Soc. Sec. Admin., 466 F.3d 880, 885 (9th Cir. 2006) (quoting Stout v. Soc. Sec. Admin., 454 F.3d 1050, 1055 (9th Cir. 2006)); see also Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005).

1  IV.  RELEVANT LAW

Disability Insurance Benefits and Supplemental Security Income are available for every eligible individual who is "disabled."  42 U.S.C. §§ 423(a)(1)(E) (DIB), 1381a (SSI).  Plaintiff is "disabled" if she is "'unable to engage in substantial gainful activity due to a medically determinable physical or mental impairment . . ..'"  Bowen v. Yuckert, 482 U.S. 137, 140 (1987) (quoting identically worded provisions of 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A)).

The Commissioner uses a five-step sequential evaluation process to determine whether an applicant is disabled and entitled to benefits.  20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4); Barnhart v. Thomas, 540 U.S. 20, 24-25 (2003) (setting forth the "five-step sequential evaluation process to determine disability" under Title II and Title XVI).  The following summarizes the sequential evaluation:

> Step one: Is the claimant engaging in substantial gainful activity?  If so, the claimant is not disabled.  If not, proceed to step two.

20 C.F.R. §§ 404.1520(a)(4)(i), (b) and 416.920(a)(4)(i), (b).

> Step two: Does the claimant have a "severe" impairment?  If so, proceed to step three.  If not, the claimant is not disabled.

Id., §§ 404.1520(a)(4)(ii), (c) and 416.920(a)(4)(ii), (c).

> Step three: Does the claimant's impairment or combination of impairments meet or equal an impairment listed in 20 C.F.R., Pt. 404, Subpt. P, App. 1?  If so, the claimant is disabled.  If not, proceed to step four.

Id., §§ 404.1520(a)(4)(iii), (d) and 416.920(a)(4)(iii), (d).

> Step four: Does the claimant's residual functional capacity make him capable of performing his past work?  If so, the claimant is not disabled.  If not, proceed to step five.

Id., §§ 404.1520(a)(4)(iv), (e), (f) and 416.920(a)(4)(iv), (e), (f).

> Step five: Does the claimant have the residual functional capacity perform any other work?  If so, the claimant is not disabled.  If not, the claimant is disabled.

Id., §§ 404.1520(a)(4)(v), (g) and 416.920(a)(4)(v), (g).

"Once a claimant has been found to be disabled, . . . a presumption of continuing disability arises in her favor."  Bellamy v. Sec. of Health & Human Servs., 755 F.2d 1380, 1381

(9th Cir. 1985) (citing Murray v. Heckler, 722 F.2d 499, 500 (9th Cir. 1983). The Commissioner periodically reviews whether the claimant continues to be entitled to benefits. See 42 U.S.C. § 423(f); 20 C.F.R. § 404.1594(a). At continuing disability review, an ALJ conducts an eight-step inquiry, as follows:[3]

> (1) Are you engaging in substantial gainful activity? If you are (and any applicable trial work period has been completed), we will find disability to have ended (see paragraph (d)(5) of this section).
>
> (2) If you are not, do you have an impairment or combination of impairments which meets or equals the severity of an impairment listed in appendix 1 of this subpart? If you do, your disability will be found to continue.
>
> (3) If you do not, has there been medical improvement as defined in paragraph (b)(1) of this section? If there has been medical improvement as shown by a decrease in medical severity, see step (4). If there has been no decrease in medical severity, there has been no medical improvement. (See step (5).)
>
> (4) If there has been medical improvement, we must determine whether it is related to your ability to do work in accordance with paragraphs (b)(1) through (4) of this section; i.e., whether or not there has been an increase in the residual functional capacity based on the impairment(s) that was present at the time of the most recent favorable medical determination. If medical improvement is not related to your ability to do work, see step (5). If medical improvement is related to your ability to do work, see step (6).
>
> (5) If we found at step (3) that there has been no medical improvement or if we found at step (4) that the medical improvement is not related to your ability to work, we consider whether any of the exceptions in paragraphs (d) and (e) of this section apply. If none of them apply, your disability will be found to continue. If one of the first group of exceptions to medical improvement applies, see step (6). If an exception from the second group of exceptions to medical improvement applies, your disability will be found to have ended. The second group of exceptions to medical improvement may be considered at any point in this process.
>
> (6) If medical improvement is shown to be related to your ability to do work or if one of the first group of exceptions to medical improvement applies, we will determine whether all your current impairments in combination are severe (see § 404.1521). This determination will consider all your current impairments and the

---

[3] This is the test for Title II cases, used here because both Title II and Title XVI are alleged, and it subsumes the shorter Title XVI test. The evaluation process for Title XVI-only cases is a seven-step test that begins with the question whether the claimant has an impairment or combination of impairments which meets or equals a Listing (i.e., step two of the Title II inquiry). See 20 C.F.R. §§ 404.1594, 416.994.

5

impact of the combination of those impairments on your ability to function. If the residual functional capacity assessment in step (4) above shows significant limitation of your ability to do basic work activities, see step (7). When the evidence shows that all your current impairments in combination do not significantly limit your physical or mental abilities to do basic work activities, these impairments will not be considered severe in nature. If so, you will no longer be considered to be disabled.

(7) If your impairment(s) is severe, we will assess your current ability to do substantial gainful activity in accordance with § 404.1560. That is, we will assess your residual functional capacity based on all your current impairments and consider whether you can still do work you have done in the past. If you can do such work, disability will be found to have ended.

(8) If you are not able to do work you have done in the past, we will consider whether you can do other work given the residual functional capacity assessment made under paragraph (f)(7) of this section and your age, education, and past work experience (see paragraph (f)(9) of this section for an exception to this rule). If you can, we will find that your disability has ended. If you cannot, we will find that your disability continues.

(9) We may proceed to the final step, described in paragraph (f)(8) of this section, if the evidence in your file about your past relevant work is not sufficient for us to make a finding under paragraph (f)(7) of this section about whether you can perform your past relevant work. If we find that you can adjust to other work based solely on your age, education, and residual functional capacity, we will find that you are no longer disabled, and we will not make a finding about whether you can do your past relevant work under paragraph (f)(7) of this section. If we find that you may be unable to adjust to other work or if § 404.1562 may apply, we will assess your claim under paragraph (f)(7) of this section and make a finding about whether you can perform your past relevant work.

20 C.F.R. § 404.1594(f).[4]

## V. THE ALJ's DECISION

The ALJ made the following findings:

1. The most recent favorable medical decision finding that the claimant continued to be disabled is the determination dated November 7, 2011. This is known as the "comparison point decision" or CPD.

2. At the time of the CPD the claimant had the following medically determinable impairments: herniated disc of the lumbar spine;

---

[4] These regulations were updated effective March 27, 2017. They were in effect and apply here because the ALJ's decision is dated July 12, 2017. AR 22.

6

degenerative disc disease; cyclic vomiting syndrome; depression; and anxiety disorder. These impairments were found to result in the residual functional capacity to perform unskilled, sedentary work with frequent and unplanned breaks.

3. Through June 2, 2015, the date claimant's disability ended, the claimant did not engage in substantial gainful activity (20 CFR 404.1594(f)(1)).

4. The medical evidence establishes that the claimant did not develop any additional impairments after the CPD through June 2, 2015. Thus, the claimant continued to have the same impairments that she had at the time of the CPD except for depression.

5. Since June 2, 2015, the claimant did not have an impairment or combination of impairments which met or medically equaled the severity of an impairment listed in 20 CFR Part 505, Subpart P, Appendix 1 (20 CFR 404.1525 and 404.1526).

6. Medical improvement occurred as of June 2, 2015 (20 CFR 404.1594(b)(1)).

7. After careful consideration of the entire record, the undersigned finds that, as of June 2, 2015, the claimant had the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) with frequent postural limitations; limited to simple and detailed job instructions and occasional contact with the public, coworkers, and supervisors; and need for close proximity to a restroom.

8. The claimant's medical improvement is related to ability to work because it resulted in an increase in the claimant's residual functional capacity (20 CFR 404.159(c)(3)(ii)).

9. As of June 2, 2015, the claimant's impairments w[ere] severe (20 CFR 404.1565).

10. As of June 2, 2015, the claimant was unable to perform past relevant work (20 CFR 404.1565).

11. On June 2, 2015, the claimant was a younger individual age 18-49 (20 CFR 404.1563)

12. The claimant has at least a high school education and is able to communicate in English (20 CFR 404.1564).

13. Transferability of job skills is not an issue in this case because the claimant's past relevant work is unskilled (20 CFR 404.1568).

14. As of June 2, 2015, considering the claimant's age, education, work experience, and residual functional capacity, the claimant was able to perform a significant number of jobs in the national economy (20 CFR 404.1560(c) and 404.1566).

////

|   |   |
|---|---|
| 1 | 15. The claimant's disability ended as of June 2, 2015 and the claimant has not been disabled again through the date of this decision (20 CFR 404.1594(f)(8)). |
| 2 | |

AR 16-22.

As noted, the ALJ concluded that plaintiff's period of disability ended on June 2, 2015. AR 22.

## VI. ANALYSIS

Plaintiff alleges that the ALJ erred by failing to provide clear and convincing reasons for discrediting her statements regarding the intensity, persistence and limiting effects of her symptoms, specifically with respect to her cyclic vomiting syndrome ("CVS"). ECF No. 13 at 12-13. The undersigned agrees. In weighing a plaintiff's subjective testimony, the ALJ uses a two-step process. Trevizo v. Berryhill, 871 F.3d 664, 678 (9th Cir. 2017). The ALJ must first determine whether there is objective medical evidence of an underlying impairment that could reasonably be expected to produce some degree of the alleged symptoms. Ghanim v. Colvin, 763 F.3d 1154, 1163 (9th Cir. 2014). If the first step is satisfied, and provided there is no evidence of malingering, the second step allows the ALJ to reject the claimant's testimony of the severity of symptoms if the ALJ can provide specific findings and clear and convincing reasons for rejecting the claimant's testimony. Id.

The clear and convincing standard is a high one; "[g]eneral findings are insufficient; rather, the ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints." Lester v. Chater, 81 F.3d 821, 834 (9th Cir. 1995), as amended (Apr. 9, 1996). "An ALJ may consider a range of factors in assessing credibility, including (1) ordinary techniques of credibility evaluation, such as the claimant's reputation for lying, prior inconsistent statements concerning the symptoms, and other testimony by the claimant that appears less than candid; (2) unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment; and (3) the claimant's daily activities." Ghanim, 763 F.3d at 1163 (internal citations omitted).

Here, plaintiff testified that her "cyclic vomiting . . . is one of the main things" keeping her from being able to work. AR 278. Plaintiff stated she has an episode at least one week out of

8

the month, but it is sporadic and sometimes it's spread out; it is a "can happen at any time kind of thing." Id. Plaintiff testified that she has not gone an entire month without vomiting, and that there are a variety of triggers that might set off her vomiting. AR 279. She stated that she is taking Phenergan, Zofran, and Ativan to treat her CVS, but the medication does not decrease the frequency of her episodes; it "just helps me try to get through it." Id. Plaintiff testified that episodes last anywhere from an hour to a couple of days. AR 278-80. She testified that she had recently, within the past month, experienced an extended episode which lasted about five days and ended in her going to the hospital for rehydration. AR 280. She testified that her weight has fluctuated significantly because she has periods where she is sick more than others. Id. She testified that she is sometimes up all night vomiting. AR 288. Plaintiff stated that when she is having a CVS episode, she cannot do the household chores that she generally does, and relies on her husband to help her. AR 292. On those days she cannot walk her dogs, and she mostly just stays in bed all day with a bowl by her. AR 293.

The ALJ found that plaintiff's "medically determinable impairments could have been expected to produce the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with the residual functional capacity assessments[,]" stating the rationale is articulated in the opinion. AR 18. The ALJ goes on to conclude that plaintiff's "allegations are inconsistent with medical evidence" and are "inconsistent with her . . . level of activities." AR 18, 20. Neither of these proffered reasons withstands scrutiny.

Regarding inconsistency with the medical evidence, the ALJ states that "multiple CT scans" of the abdomen showed no abnormality. However, the ALJ's citations identify eight places in the medical record that document the same January 23, 2015 CT scan report. AR 18; compare AR 767, 769, 832, 857, 1050-51, 1055-56, 1177-78, 2057-58. The ALJ's assertion that there were multiple normal findings is factually incorrect, and she does not explain how one CT scan showing an "unremarkable" bowel is medically inconsistent with plaintiff's testimony regarding the frequency and severity of her vomiting.

////

9

The only other test the ALJ references is a gastric emptying study done in 2014 with normal results. AR 18; see AR 566. The ALJ does nothing to explain how plaintiff's reports of CVS symptoms are incompatible with this test result. Indeed, the order for the gastric emptying study from March 30, 2014 specifically states the test was ordered to evaluate a different condition: gastroparesis. AR 563.

As to physical exams, the ALJ referenced a "normal" exam in March of 2014 despite reports of vomiting (AR 18, 556), but does not identify any specific "normal" finding that conflicts with plaintiff's symptom descriptions. To the extent the ALJ focused on the finding of a "soft, non-tender and non-distended" abdomen, it is not clear how this exam finding conflicts with the plaintiff's report of her CVS symptoms. The same is true of the ALJ's other exam reference, a July 2014 ER visit in which a non-tender abdomen was observed. AR 1236. Indeed, an information sheet about CVS in the record, generated by Kaiser Permanente, states that "[b]etween the vomiting episodes, the person's health is normal. The cause of CVS isn't known, but it may be related to migraine headaches." AR 247. These exam findings of a non-tender abdomen between vomiting episodes do not contradict or otherwise obviously discredit plaintiff's testimony, and the ALJ does not explain her logic.

The ALJ also found plaintiff noncredible on the basis that a July 2015 ER visit contained a note that plaintiff "looked comfortable and was smiling." AR 20, 1236. The ALJ's attempt to discredit plaintiff by citing a cherry-picked example of her smiling at an ER visit is not persuasive for multiple reasons. First, the note referenced is in the ED plan/assessment portion of the record, and plaintiff may have looked comfortable for many reasons, including that she was feeling better after receiving an IV containing 2 liters of NS (normal saline), Ativan, and Zofran. See AR 1236. Second, the ALJ failed to cite any other ER visit containing a similar note, and omitted conflicting notes from other ER visits. AR 1234 (July 2015 ER note stating that "the patient is nervous/anxious."). This omission is particularly suspect given the fact that plaintiff visited the ER for uncontrolled vomiting numerous times in 2016 and 2017. AR 2295, 2362, 2579. While ALJs "obviously must rely on examples to show why they do not believe that a claimant is credible, the data points they choose must in fact constitute examples of a broader development to

10

satisfy the applicable 'clear and convincing' standard." Garrison v. Colvin, 759 F.3d 995, 1018 (9th Cir. 2014)

The ALJ thought that plaintiff's testimony was also inconsistent with the fact that she weighed 197 pounds in May of 2015, with a body mass index of 29.1 (which is normal), despite her March 2015 report of vomiting almost every day and a couple times a day and her May 2015 report of difficulty keeping "anything down." AR 19. This single data point is misleading. Plaintiff's records demonstrate a 15-pound weight loss between the end of March 2014 (212 pounds) and the beginning of June 2015 (197 pounds), which is consistent with plaintiff's statement that her vomiting episodes were increasing during that time. AR 1176. Further, by October 2015 plaintiff was down to 181 pounds (AR 2190) and by February 12, 2016 she was down to 178 pounds (AR 556). This continued weight loss supports plaintiff's claims of fluctuating weight, and of increased vomiting episodes beginning around March 2015 and continuing into 2017. It was error for the ALJ to choose a single data point, devoid of context, as a basis for discrediting plaintiff's testimony. See Garrison, 759 F.3d at 1018.

The ALJ's second rationale, that plaintiff's testimony conflicts with her activities of daily living, is similarly flawed. The ALJ pointed to evidence that shows plaintiff was training to become a police cadet in 2014, and at the time was active with cardio and kick boxing workouts, was going to the gym 6-7 times per week, and was off pain medications. AR 20. The ALJ further noted that plaintiff injured her hand playing football in January of 2015 and was able to engage in swimming and long walks in February of 2015. Id. Again, the ALJ ignores the waxing and waning nature of CVS, and cherry-picked evidence from a less symptomatic period to discredit plaintiff. See Garrison, 759 F.3d at 1018. The ALJ pointed to evidence from March 2014 to January-February 2015, a less symptomatic period, while ignoring the uptick in CVS episodes that occurred after February of 2015. For example, in February of 2015, medical records reflect that plaintiff reported her CVS made it difficult to volunteer even one day per week. AR 2320. The ALJ also ignores the fact that plaintiff exercised in an attempt to reduce CVS episodes, which demonstrates that exercise is not inconsistent with CVS. Id. For all of the

////

11

reasons described above, the ALJ erred in discounting plaintiff's subjective testimony with respect to the intensity, persistence, and limiting effects of her CVS.

## VII. CREDIT AS TRUE AND AWARD OF BENEFITS

When the ALJ errs, the court has "discretion to remand a case either for additional evidence and findings or for an award of benefits." McCartey v. Massanari, 298 F.3d 1072, 1076 (9th Cir. 2002). The Ninth Circuit uses a "three-part credit-as-true standard, each part of which must be satisfied in order for a court to remand to an ALJ with instructions to calculate and award benefits: (1) the record has been fully developed and further administrative proceedings would serve no useful purpose; (2) the ALJ has failed to provide legally sufficient reasons for rejecting evidence, whether claimant testimony or medical opinion; and (3) if the improperly discredited evidence were credited as true, the ALJ would be required to find the claimant disabled on remand." Garrison, 759 F.3d at 1020.

Here, it is appropriate to credit plaintiff's testimony regarding the intensity, persistence, and limiting effects of her CVS as true, and remand for an immediate award of benefits. First, the record has been fully developed; plaintiff has given clear testimony. The only purpose remand would serve would be to allow the ALJ an opportunity to discredit plaintiff on different grounds, but "precedent and the objectives of the credit-as-true rule foreclose the argument that a remand for the purpose of allowing the ALJ to have a mulligan qualifies as a remand for a 'useful purpose' under the first part of credit-as-true analysis." Id. at 1021. Second, as discussed in detail above, the ALJ failed to provide legally sufficient reasons for rejecting plaintiff's testimony.

Third and finally, the record is clear that if plaintiff's testimony were credited, she would be disabled. Plaintiff testified that her vomiting episodes happen at least a week out of the month, lasting anywhere from an hour to a couple of days each. AR 280. This is consistent with plaintiff's statements in the medical record. For example, on July 6, 2015 plaintiff reported 6-8 episodes per day for the past 3-4 days and noted that her normal frequency is 3-4 episodes per day. AR 1232. Plaintiff also testified that her episodes are unpredictable, describing them as "[a] can happen at any time kind of thing . . . It's never like a, you know, you can plan for it or

12

anything." AR 278-79. At the hearing, the VE testified that there would not be any jobs for an individual with two or more absences a month consistently. AR 297. The VE also testified that a limitation for frequent unplanned breaks would preclude all jobs, explaining that "frequent breaks would affect productivity and therefore [the individual] would not be competitive for employment. The standard breaks would be one in the morning, one in the afternoon and the lunch break, so if she goes beyond that, it would start affecting productivity." AR 298. Applying the VE's testimony to plaintiff's testimony, it is clear that if plaintiff's testimony is credited, she is disabled. Remand for an immediate award of benefits is therefore appropriate here.

## VII. CONCLUSION

For the reasons set forth above, IT IS HEREBY ORDERED that:

1. Plaintiff's motion for summary judgment (ECF No. 13), is GRANTED;

2. The Commissioner's cross-motion for summary judgment (ECF No. 14) is DENIED; and

3. The Clerk of the Court shall REMAND this case for an immediate award of benefits, enter judgment for plaintiff, and close this case.

DATED: January 15, 2020

_____
ALLISON CLAIRE
UNITED STATES MAGISTRATE JUDGE